Page, J.
ORDER
This action comes before this court on the Plaintiffs, Daniel W. Boone (“Boone”), motion to compel the production of a report prepared by Barbara Granger (“Granger”), a nurse at Harrington Hospital (“Harrington”) after an outdated device was inserted in Boone during a surgical procedure.[1] Harrington claims the report is protected pursuant to G.L.c. 111, §§204 and 205, the peer review committee privilege.
After a hearing and a review of the motions and briefs, this court finds and rules that the document in question is not subject to the peer review privilege.
The purpose of the medical peer review privilege, set forth in G.L.c. 111, §§204 and 205, is to promote uninhibited investigation and expression of opinion in peer review proceedings. Grande v. Lahey Clinic Hosp., Inc., 49 Mass.App.Ct. 77, 79 (2000); Carro. Howard; New England Deaconess Hosp. Corp., 426 Mass. 514, 518 (1998); Beth Israel Hosp. Association v. Board of Registration in Medicine, 401 Mass. 172, 182 (1987). General Laws c. 111, §204(a) reads in relevant part:
[T]he proceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery or introduced into evidence in any judicial or administrative proceedings . . .
A medical peer review committee, defined in G.L.c. 111, §1, includes a
Committee of... a medical staff. . . which . . . has as its function the evaluation or improvement of the quality of health care rendered by providers of health care services, the determination whether health care services were performed in compliance with the applicable standards of care, the determination whether the cost of health care services rendered was considered reasonable by the providers of health services in the area, the determination of whether a health care provider’s actions call into question such health care provider’s fitness to provide health care services or the evaluation and *295 assistance of health care providers impaired or allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise
The scope of what constitutes proceedings, reports and records of a medical peer review committee is defined in G.L.c. 111, §205(b), which provides that:
Information and records . . . which are necessary to the work product of medical peer review committee . . . shall be deemed to be proceedings, reports or records of a medical peer review committee for purposes of [sec. 204] . . .
A party asserting a privilege under G.L.c. 111, §205(b) must produce evidence tending to show (1) that the information and records sought are necessary to comply with risk management and quality assurance programs established by the Board of Registration in Medicine and, (2) that the information and records are reasonably necessary to the work product of medical peer review committees. Carr v. Howard, 426 Mass, at 522-23 citing G.L.c. 111, Sec. 205(b).
The existence of a claimed privilege is essentially a question of fact for the trial judge. Miller v. Milton Hosp. and Med. Center, Inc., 54 Mass.App.Ct. 495, 498-99 (2002). The party asserting the privilege has the burden to establish that it applies. See Id. The determination of whether the medical peer review privilege applies turns on the way in which a document was created and the purpose for which it was used, not on its content. Id., citing Carr, 426 Mass, at 531.
Harrington asserts that this report satisfies the two general requirements of G.L.c. Ill, §205(b). It contends that Granger’s incident report was (1) submitted in compliance with the risk management and quality assurance programs established by the Board of Registration of Medicine and, (2) is necessary to the work product of the peer review committee and thus should be exempt from public disclosure. Carr, 426 Mass, at 522-23.
In support of its position, Harrington has submitted the affidavits of Richard Mangion, President and Chief Executive Officer of Harrington (“Mangion’’), Charlene Richard, Director of Human Resources (“Richard”) and Marlene Mach, Director of Quality Assessment (“Mach”).
All three affidavits recite that Harrington has established risk management and qualified patient care assessment programs. They also all reiterate the importance of incident reports and their role in the functioning of risk management and quality assurance programs. Richard’s affidavit avers that “if there is a question of a patient care issue, incident reports are referred to the Quality Assessment Committee for internal assessment and evaluation to determine whether peer review inquiry is appropriate.” Mach states that an incident report is initially routed through the Risk Management Committee and if they potentially involve a peer review issue it is then “typically” forwarded to Qualily Assessment. Quality Assessment then performs an internal assessment to determine whether “a formal peer review inquiry is appropriate.” (Emphasis supplied.) Coincidentally, Mangion states the exact same.[2] However, not one of these affidavits supports Harrington’s position that the report “was necessary to the work product of the peer review process.” While the party asserting the privilege need not show that a peer review process was established at the time of the creation of the document, not one of the hospital’s affidavits specifically avers that Granger’s report was created by, for or as a result of a medical peer review.
Moreover, Mach’s affidavit states that the Risk Management Committee, which initially receives incident reports, is not assigned peer review activities. It is doubtful that a report which is first routed to a committee which performs no peer review functions is considered necessary to peer review. If such a report were critical to the peer review process, it would be routed immediately to a committee which performs such functions. Absent a showing of what criteria Risk Management employs to determine which reports are considered to “potentially involve peer review functions,” its determination is arbitrary. Such reports cannot be necessary to peer review as a number of reports may not be forwarded to Quality Assessment, who must decide if the report even qualifies for peer review purposes. Although Harrington only bears the burden of showing that the information it seeks to protect is necessary to peer review work generally, it has failed to do so. Miller, 54 Mass.App.Ct. at 499.
Furthermore, Harrington’s argument ignores the following: that Granger’s report was prepared prior to the initiation of a peer review committee; it thus cannot be deemed the work product of a peer review committee. According to Granger’s deposition, the report was prepared immediately following the operation and in response to her concerns about the use of an outdated device. Her deposition testimony also clearly reflects a self-protection justification for submitting a report to her superiors. Harrington was not even aware of Boone’s medical situation until one week after Granger wrote her report.
Harrington has not carried its burden in providing evidence that Granger’s report was necessary to the work product of its medical peer review committee. The affidavits of numerous hospital officials repeatedly state that an incident report could only potentially begin a peer review or that it “often” initiated peer review. No competent evidence supports the conclusion that Granger’s incident report was necessary to the work product of Harrington’s medical peer review committee.
Accordingly, Harrington has not carried its burden of establishing that the information in Granger’s report is protected by the medical peer review committee *296 privilege. Nothing has been provided to show that the report at issue is necessary to the work product of the medical peer review committee, or that it was created by, for, or as a result of such a committee.
ORDER
For the foregoing reasons, Boone’s motion to compel is ALLOWED. It is further ORDERED that Harrington produce Granger’s incident report within 30 days of the date of this order.

The action pending in the Hampden County Superior Court is Civil Action No. 98-60, Daniel and Mary Boone v. Steven M. Schonholz. Harrington Hospital is a non-party deponent.

“[I]ncident reports which potentially involve peer review functions are typically forwarded to the Quality Assessment & Performance Improvement Committee for internal assessment, including determination of whether a formal peer review inquiry is appropriate."